Filed 8/21/14  P. v. Gaitan CA2/3

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DARIO GARCIA GAITAN,<br><br>    Defendant and Appellant. | B252671<br><br>(Los Angeles County<br>Super. Ct. No. TA129827) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Joseph S. Klapach, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Dario Garcia Gaitan, appeals from the judgment entered following his pleas of no contest to making criminal threats (Pen. Code, § 422, subd. (a))[1] (count 1), inflicting corporal injury on a spouse or cohabitant (§ 273.5, subd. a)) (count 2), resisting a police officer (§ 148, subd. (a)(1)) (count 4), and his admission with regard to counts 1 and 2 he previously had been convicted of the serious or violent felony (§§ 667, subd. (d), 1170.12, subd. (b)) of shooting at an inhabited dwelling house (§ 246) within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced Gaitan to seven years in prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

Gaitan and the victim, Ruby P., had been dating for approximately seven years and had four children together. On August 30, 2013, Gaitan accused Ruby P. of seeing other men and the two began to argue. Gaitan "punched [Ruby P.] on her upper thighs" and hit her with his open hand on her face and body. When Ruby P. told Gaitan she was going to leave him, he threatened to burn down her mother's house. Ruby P., who was afraid of Gaitan, then decided to stay.

Throughout the day, Gaitan and Ruby P. had a number of arguments, during some of which he struck Ruby P. and during one of which he broke her cell phone. Gaitan then began to ransack the apartment. When Ruby P. finally told him she was going to her mother's house, Gaitan threatened her. He told Ruby P., " 'You can leave, but I'm gonna hurt you and you know what I'm going to do.' " After Gaitan told her he was going to hurt her, Ruby P. was afraid to leave.

One of Gaitan's and Ruby P.'s daughters was at home while the two were arguing. She became so frightened she left the apartment and called the police. When officers arrived, they "announced themselves" and knocked on the door. When no one answered, the officers had the apartment manager unlock the apartment door. Inside, Gaitan was

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The facts have been taken from the probation report.

2

yelling as he was holding Ruby P. "around her shoulder." Although the police gave Gaitan various commands, he ignored them and continued to yell, telling the officers to leave his residence. After a time, however, Gaitan was taken into custody.

The police report indicated Ruby P. "sustained bruising to both of her arms, bruising on both upper thighs, minor abrasion[s] on [her] forehead and bruising to her left eye." Although she had suffered these injuries, Ruby P. told the officers "she wasn't seriously injured and needed no medical treatment."

2. *Procedural history*.

A felony complaint filed on September 4, 2013 alleged in count 1 that, on or about August 30, 2013, Gaitan committed the serious felony (§ 1192.7, subd. (c)) of making criminal threats against Ruby P. in violation of section 422, subdivision (a). Count 2 alleged Gaitan inflicted corporal injury on Ruby P., a "spouse/cohabitant/child's parent," a felony in violation of section 273.5, subdivision (a). In addition, it was alleged that, during the commission of the crime, Gaitan personally used a deadly weapon, a stick, which caused the crime to be a serious or violent felony (§§ 1192.7, subd. (c)(23), 1170, subd. (h)(3)) for which he could be required to serve an additional year in prison (§ 12022, subd. (b)(1)).

In count 3, it was alleged Gaitan committed the crime of assault by means likely to produce great bodily injury, a felony in violation of section 245, subdivision (a)(4). It was further alleged that, should he be incarcerated for the offense, any time imposed was to be served in state prison. Count 4 alleged Gaitan resisted, obstructed or delayed peace officers while the officers were attempting to and discharging the duties of their office and employment in violation of section 148, subdivision (a)(1), a misdemeanor. In count 5 it was alleged Gaitan committed vandalism of property worth less than $400 in violation of section 594, subdivision (a), a misdemeanor, when he destroyed a cell phone belonging to Ruby P.

It was further alleged that prior to the offenses charged in counts 1, 2 and 3, Gaitan had suffered a conviction for the "serious and/or violent felony" (§§ 667, subd. (d), 1170.12, subd. (b)) of discharging a firearm at an inhabited dwelling in violation of

3

section 246, which required him to be sentenced within the provisions of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  The prior conviction also made him eligible for a sentence enhancement pursuant to section 667, subdivision (a)(1).

At proceedings held on September 18, 2013, the trial court indicated it was its understanding Gaitan was going to enter pleas of no contest to counts 1, 2 and 4, count 4 being a misdemeanor.  The court continued:  "Count 1 is a strike he's pleading to.  He is going to get the high term of three years and he is going to admit the strike that's currently alleged for [the] high term of three years doubled for six years.  [¶]  [For] Count 2 he is going to get the mid term of three years concurrent with the six years on count 1[,] meaning served at the same time.  [¶]  And then Count 4, the one year [is] to be served consec[utively,] meaning in addition to the six years[,] for a total [sentence] of seven years."

After the prosecutor explained to Gaitan the charges to which he would be pleading, Gaitan indicated he understood them and was entering the pleas because it was in his best interest to do so.  Gaitan also recognized he would be "admitting a prior strike allegation."  The prosecutor then indicated, by entering the pleas, Gaitan would be sentenced to seven years in prison when the "maximum sentence [he] could [have] receive[d] on all of the counts . . . charged [was] 20 years and four months in state prison."

The prosecutor then advised Gaitan of his "right to a preliminary hearing," his "right to a jury or court trial," his "right to confront and cross-examine [the] witnesses against [him]," the "right to use the subpoena power of the court at no cost to [him]," the "right to present a defense and testify as part of that defense," although "no one [could] force [him] to testify because [he] also [had] the right to remain silent and the right against self-incrimination."  After Gaitan indicated he understood and was willing to waive each of these rights, the prosecutor advised him that, if he was on probation or parole, he could be subject to additional time in custody and, because this was a second strike, any additional felony of which he might be convicted could subject him to a

4

sentence of 25 years to life under the Three Strikes law.  Gaitan indicated he understood the consequences of admitting the strike.

After stating he understood "the consequences of [his] plea" and was entering the plea "freely and voluntarily," Gaitan pled no contest to making criminal threats in violation of section 422, subdivision (a), a felony as alleged in count 1 of the complaint. As to count 2, the allegation he inflicted corporal injury on a spouse or cohabitant in violation of section 273.5, subdivision (a), Gaitan again entered a plea of no contest. Finally, Gaitan pled no contest to the allegation made in count 4, that he resisted, obstructed or delayed a peace officer in violation of section 148, subdivision (a)(1). Gaitan then admitted he previously had suffered a conviction for shooting at an inhabited dwelling house (§ 246), a "strike" within the meaning of the Three Strikes law.

The trial court found Gaitan had "knowingly, intelligently and understandingly expressed a waiver of his constitutional rights," "that the plea and admission [had been] freely and voluntarily made with an understanding of the nature and consequences thereof" and that there was "a factual basis for the plea."

Gaitan waived time for sentencing and, as to count 1, the trial court imposed the high term of three years in state prison, then doubled the term to six years based on Gaitan's "admission of [his] prior strike."  For his conviction of count 2, the trial court sentenced Gaitan to the midterm of three years, the term to run concurrently to that imposed for count 1.  With regard to his conviction of count 4, the trial court imposed a term of one year in prison,[3] the term to run consecutively to the terms imposed for the other two counts.  In total, the trial court sentenced Gaitan to seven years in prison.

---

[3]    The trial court indicated the one year term imposed for count 4 could "be served in any penal institution."

After dismissing counts 3 and 5 in light of the plea agreement, the trial court awarded Gaitan presentence custody credit for 19 days actually served and three days of good time/work time, for a total of 22 days.[4] It then ordered Gaitan to pay a $280 restitution fine (§ 1202.4, subd. (b)), a stayed parole revocation restitution fine (§ 1202.45), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373) and a $500 contribution to the Domestic Violence Fund (§ 1203.097). Finally, the trial court issued an order pursuant to section 273.5, subdivision (i) directing that Gaitan have no contact with Ruby P. with the exception of "peaceful contact . . . only for the safe exchange of children for [court-ordered] visitation as stated in a Family, Juvenile, or Probate court order . . . ."

Gaitan filed a timely notice of appeal on November 1, 2013.

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed June 4, 2014, the clerk of this court advised Gaitan to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

---

[4]     On March 6, 2014, Gaitan's appointed appellate counsel filed an ex parte motion in the trial court to correct the number of presentence custody credits awarded at sentencing. On May 19, 2014, the trial court granted the motion and awarded Gaitan credit for 20 days actually served and 10 days of good time/work time, or 30 days. The trial court then ordered the abstract of judgment amended to reflect the order.

6

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

7